UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHRISTOPHER WEEKS,

                     Plaintiff,

       -against-

CITY OF NEW YORK,
DETECTIVE GREGORY JEANBAPTISTE (TAX 904206),
SERGEANT VISSILIOS AIDINIOU (SHIELD 2826),
POLICE OFFICER JAIME SANTIAGO (SHIELD 25967),
and JOHN DOE,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**13 CV 6301 (PKC) (RER)**

**FIRST AMENDED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

       Plaintiff, Christopher Weeks, by his attorneys, Reibman & Weiner, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

       1.     At all times hereinafter mentioned plaintiff, Christopher Weeks, was an adult male and a resident of Kings County in the State of New York.

       2.     At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

       3.     At all times hereinafter mentioned, defendant, DETECTIVE GREGORY JEANBAPTISTE (Tax 904206), was a member of the NYPD, and was employed, retained, trained and supervised by New York City. Defendant Jeanbaptiste is

1

sued herein in his official and individual capacities.

4.     At all times hereinafter mentioned, defendant, SERGEANT VISSILIOS AIDINIOU (Shield 2826), was a member of the NYPD, and was employed, retained, trained and supervised by New York City. Defendant Vissilios is sued herein in his official and individual capacities.

5.     At all times hereinafter mentioned, defendant, POLICE OFFICER JAIME SANTIAGO (Shield 25967), was a member of the NYPD, and was employed, retained, trained and supervised by New York City. Defendant Santiago is sued herein in his official and individual capacities.

6.     At all times hereinafter mentioned, the Doe defendant was a member of the NYPD, and was employed, retained, trained and supervised by New York City. The Doe defendant is sued herein in his official and individual capacities.

7.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where plaintiff and defendant City of New York reside, and where many of the events complained of herein occurred.

9.     That plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

10.     At least thirty days have elapsed since service of plaintiff's Notice of

Claim and adjustment and payment thereof has been neglected or refused.

        11.     That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiff complains.

## RELEVANT FACTS

        12.     On August 31, 2012, at about 10:00 p.m., plaintiff was lawfully present on Nostrand Avenue at or near its intersection with Linden Boulevard, County of Kings, City and State of New York.

        13.     At this time, defendants Jeanbaptiste, Aidiniou, Santiago, and the Doe defendant arrived in an NYPD vehicle, on duty and acting in their capacity as members of the NYPD.

        14.     Plaintiff was not engaged in any suspicious or illegal activity.

        15.     Without warning, the defendants exited their vehicle, approached plaintiff without any legal justification or excuse, and subjected him to excessive force by, in part, slamming him to the ground and striking him on his body.

        16.     Plaintiff was not engaged in any suspicious or illegal activity and there was no legal basis or justification for the defendants to approach and detain plaintiff or to subject him to any force, much less the force actually employed.

        17.     Despite the absence of any evidence of wrongdoing on the part of plaintiff, the defendants searched plaintiff.

        18.     The search yielded no evidence of any guns, drugs, or contraband.

        19.     Without any explanation or justification, the defendants applied

handcuffs to plaintiff and formally arrested him.

20.     At no time did plaintiff resist arrest or engage in any violent or threatening behavior.

21.     The defendants continued to subject plaintiff to excessive force even after he was handcuffed by, *inter alia*, striking plaintiff on his face and body.

22.     As a result of defendants' assault on plaintiff, plaintiff sustained physical injuries.

23.     At no time did there exist any basis to utilize any level of force against Mr. Weeks, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

24.     Plaintiff was not engaged in any unlawful or suspicious activity, and repeatedly asked the defendants why they were beating and arresting him, and received no response.

25.     At no time did there exist sufficient cause to use any level of force against plaintiff, nor could the defendants have reasonably believed that such cause existed.

26.     Each of the defendants personally participated in this assault or otherwise stood by and allowed the assault to proceed.

27.     Having handcuffed and assaulted plaintiff, the defendants lifted him to his feet.

28.     Plaintiff was then taken to the 67th Precinct where he was strip searched and held for several hours before he was transferred to Kings County Hospital to receive

treatment for the injuries he sustained at the hands of the individual defendants, including, but not limited to, multiple contusions, lacerations, and an acute right medial orbital wall fracture.

29.    Plaintiff was then taken back to the 67th Precinct where he was held for several more hours, before he was taken to Kings County Central Booking where he was held for several more hours and arraigned on a criminal complaint containing false allegations sworn to or provided by defendant Jeanbaptiste.

30.    Defendant Jeanbaptiste provided false allegations in support of the criminal complaint in which he alleged that plaintiff possessed a gravity knife, resisted arrest, and that plaintiff "punched at" defendant Jeanbaptiste.

31.    These and other allegations concerning plaintiff's conduct in the criminal complaint, including his supposed possession of a gravity knife and other allegations that he engaged in any violent behavior, were false and the defendants knew these allegations to be false when they were made.

32.    As a result of the defendants' allegations, the Kings County District Attorney ("KCDA") commenced the criminal prosecution of the plaintiff for Resisting Arrest and Criminal Possession of a Weapon in the Fourth Degree.

33.    Upon information and belief, however, the KCDA agreed to dismiss all of these charges, including the claims that plaintiff possessed a gravity knife and attempted to assault defendant Jeanbaptiste, in exchange for plaintiff agreeing to plead to disorderly conduct.

34.     Upon information and belief, on July 25, 2013, plaintiff pleaded guilty to disorderly conduct, for which he was given a conditional discharge.

35.     In exchange, the KCDA dismissed all of the charges against plaintiff that were contained in the criminal complaint, including all allegations that plaintiff assaulted or attempted to assault any of the defendants and that he was in possession of a gravity knife.

36.     At no time did any of the defendants have sufficient legal cause to utilize any level of force against plaintiff, much less the amount of force actually employed, nor was there a reasonable basis for defendants to believe that such cause existed.

37.     At no time did any of the defendants take any steps to intervene in, prevent, or otherwise limit the unlawful and unconstitutional use of force by the other defendants.

38.     At all times relevant herein, defendants Jeanbaptiste, Aidiniou, Santiago, and the Doe defendant were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

39.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

40.     Defendants Jeanbaptiste, Aidiniou, Santiago, and the Doe defendant willfully and intentionally subjected plaintiff to excessive force and unlawful strip search by employing more force than reasonably necessary under the circumstances, and without a

6

reasonable basis to believe that the use of such force was appropriate, reasonable, lawful  or

necessary.

41.    Defendants' strip search or failure to prevent the strip search of

plaintiff was illegal because defendants did not have reasonable suspicion that plaintiff was

hiding illegal items.

42.    The defendants either participated in the assault or stood by and

permitted it to proceed without making any attempt to intervene and stop it from continuing.

43.    By so doing, the individual defendants, individually and collectively,

subjected the plaintiff to an excessive use of force and thereby violated of plaintiff's rights

under the Fourth Amendment of the United States Constitution.

44.    By reason thereof, the individual defendants have violated  42 U.S.C.

§1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, and the

loss of his constitutional rights.

## SECOND CAUSE OF ACTION

45.    Plaintiff repeats the allegations contained in each of the foregoing

paragraphs as though stated fully herein.

46.    Defendant City of New York was responsible for ensuring that

reasonable and appropriate levels of supervision were in place within and over the NYPD.

47.    The municipal defendant had actual or constructive knowledge that

there was inadequate supervision over and/or within the NYPD with respect to its members'

abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant

violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

48.     The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, including these defendants, and thereby deliberately and  intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

49.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

50.     The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

8

a.      Using excessive force on individuals, including but not limited to those who have already been handcuffed;

b.      Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

c.      Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

d.      Retaliating against officers who report police misconduct; and

e.      Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

51.      The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the many civil actions filed in the Eastern and Southern Districts of New York, as well as in New York State Supreme Court throughout the five boroughs of the City of New York.

52.      In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

53.      Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary

action, the NYPD either simply issues a verbal warning or drops the charges altogether.

54.     It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

55.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

56.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

57.     Plaintiff was subjected to excessive force by the defendants.

58.     At no time did defendants have any legal basis for using physical force against plaintiff, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

59.     The defendants are therefore liable under New York law to plaintiff for excessive force.

60.     By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of his constitutional rights, and unlawful incarceration.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, plaintiff demands judgment against defendants jointly and severally as follows:

i.      on each of the foregoing causes of action actual and punitive damages in an amount to be determined at trial;

ii.     statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iii.    such other relief as the Court deems just and proper.

Dated:    Brooklyn, New York
          February 20, 2014

REIBMAN & WEINER

By:        /s/
           Jessica Massimi (JM - 2920)
           Attorneys for Plaintiff
           26 Court Street, Suite 1808
           Brooklyn, New York 11242
           (718) 522-1743

11